
Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

May 27, 2022

<u>Via ECF</u>
Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

      Re:    *Maldonado, et al. v. National Football League, et al.*, 22-cv-02289-ALC
              <u>NFL Defendants' Request for a Pre-Motion Conference</u>

Dear Judge Carter:

      On behalf of the NFL Defendants, we respectfully request a conference in advance of moving to dismiss the *Maldonado* complaint. Plaintiffs claim the NFL Defendants violated the antitrust laws by doing what hundreds of branded consumer products companies do: adopting an authorized online retailer policy, enforcing their trademarks, and outsourcing the operation of ecommerce websites to a third party (here, Fanatics). None of this is illegal. Nor does it become illegal by tacking on the word "conspiracy" or allegations of Fanatics' dealings with its suppliers.

      As explained in Defendants' motion to compel arbitration, however, these issues must be decided in arbitration. Any briefing on a motion to dismiss in this or any related case including the recently filed *Casey's Distributing, Inc., et al. v. National Football League, et al.*, 22-cv-03934-ALC (S.D.N.Y.), should therefore be stayed pending decision on the motion to compel. That said, consistent with the Court's Rules, we explain why the complaint cannot stand.

      ***<u>NFLP's Online Distribution Policy ("ODP") Is Not Unlawful</u>***. NFL Properties ("NFLP") is the exclusive licensor of the NFL's, and in certain contexts the NFL member clubs', trademarks. NFLP's licensees create NFL- and club-branded consumer products ("NFL Licensed Products"). Plaintiffs' attack NFLP's ODP, which requires authorization from NFLP for licensees to sell NFL Licensed Products to retailers who resell them on third-party online marketplaces ("TPOMs") like Amazon. It is not a ban on selling NFL merchandise online. NFL licensees can sell to any retailer for sale on such retailer's own website, or for sale to others (including Amazon) to sell directly to consumers, even without NFLP authorization. Nor is the ODP a ban on selling through TPOMs. TPOM retailers simply require authorization, which NFLP has granted to numerous retailers. Plaintiffs do not deny that all of these avenues are available. Plaintiffs simply speculate that prices would be lower if the ODP did not contain an authorization requirement for TPOM retailers.

      For the last **six decades**, the Supreme Court has consistently upheld vertical non-price policies like NFLP's ODP under the rule of reason because they bring recognized procompetitive benefits. *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36 (1977). It is "not unreasonable for a manufacturer to refuse to allow a specific retailer to market the manufacturer's products." *Continental T.V. v. G.T.E. Sylvania*, 694 F.2d 1132, 1138 n.12 (9th Cir. 1982). This is because authorized retailer policies "promote *inter*brand competition without overly restricting *intra*brand competition," *id.* at 1137, thus "encourag[ing] retailers to invest in tangible or intangible services or promotional efforts that aid the manufacturer's position as against rival manufacturers." *Leegin*

Page 2

*Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890-92 (2007).  Since *Sylvania*, no court has condemned an online distribution policy like the NFLP's.  To the contrary, courts routinely uphold authorized retailer policies.  *E.g.*, *O.S.C. Corp. v. Apple Computer, Inc.*, 601 F. Supp. 1274, 1293 (C.D. Cal. 1985) (approving policy prohibiting mail order sales), *aff'd* 792 F.2d 1464 (9th Cir. 1986); *Local Beauty Supply, Inc. v. Lamaur, Inc.*, 787 F.2d 1197, 1202 (7th Cir. 1986) (approving policy restricting sales to non-salons); *see also, e.g.*, *Flash Elecs. v. Universal Music*, 312 F. Supp. 2d 379 (E.D.N.Y. 2004) (upholding exclusive distributorships for Universal videos).

Recognizing U.S. law does not support their claims, plaintiffs attempt to plead around it.  *First*, they assert that vertical online distribution policies have been found unlawful under E.U. law.  Cmplt. ¶ 252.  Putting aside that plaintiffs are not right substantively, suffice it to say this is not a case under E.U. law.

*Second*, plaintiffs claim that NFLP's ODP is not "vertical" because each NFL member club is a trademark owner, and therefore the NFLP's joint licensing of NFL and club marks should be regarded as a "walking horizontal conspiracy."  Cmplt. ¶¶ 4, 90, 203.  Plaintiffs do not challenge the upstream agency agreement giving NFLP certain control over licensing of the relevant marks, nor could they.  For one thing, they lack standing to reach so far up the distribution chain.  Plaintiffs are at the opposite end of the distribution chain from the NFLP, with at least **four steps** in between.  Plaintiffs are not licensees.  They purchased finished goods from retailers, who purchased those goods from distributors, who purchased them from manufacturers, who licensed the marks from NFLP.  Antitrust law, however, does "not … go beyond the first step."  *Associated Gen. Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 534 (1983).  Even if plaintiffs had standing, a challenge to the upstream agency agreement would fail on the merits.  *MLBP v. Salvino, Inc.*, 542 F.3d 290, 318 (2d Cir. 2008) (upholding MLBP agency agreement because it does not "restrict or necessarily reduce the number of licenses to be issued; it merely alters the identity of the licenses' issuer").  Thus, the NFLP's *downstream* policies – including the ODP – are no different than the kind of unilateral, non-price vertical distribution policies that courts have long upheld.  *See Texaco Inc. v. Dhager*, 547 U.S. 1, 6 (2006) (the post-formation acts of a "joint venture [are] regarded as a single firm," not the separate acts of the venture's parents); Areeda & Hovenkamp, Antitrust Law ¶ 1478c, at 325 (2d ed. 2003).

*Third*, plaintiffs attempt to characterize licensees' downstream "enforcement" of the ODP as somehow illegal.  But enforcement of a lawful policy cannot be unlawful.  Merely labelling such enforcement a "group boycott" does not change that.  Plaintiffs have alleged nothing more than licensees abiding by the ODP.  That is not a group boycott; it is distribution management.  It occurs under every authorized retailer policy.  *See Int'l Logistics Grp., Ltd. v. Chrysler Corp.*, 884 F.2d 904, 907 (6th Cir. 1989) ("conspiracy may not evolve … where a dealer or distributor involuntarily complies [with a unilateral policy] to avoid termination.").

Plaintiffs' claimed anticompetitive effects also fail.  Plaintiffs would limit the relevant product market to NFL Licensed Products sold online.  Cmplt. ¶ 275.  But if baseball IP competes with "football, boxing, basketball, ice skating, hockey, and NASCAR" IP – as the Second Circuit found in *Salvino* – so too must NFL merchandise compete with other sports league merchandise. 542 F.3d at 328-31; *see also, e.g.*, *Spinelli v. NFL*, 96 F. Supp. 3d 81, 112 (2015) (the complaint "does not make sufficient factual allegations that would justify a product market limited to NFL-

related photographs to the exclusion of, at a minimum, other sports-related photographs"). The fact that NFL fans may purchase NFL merchandise does not create a separate market consisting solely of NFL licensed products. A Cleveland Browns shirt is substitutable for a Nike shirt, a Chicago Bulls shirt, or an unbranded shirt. As plaintiffs admit, the "reality … is that a Denver Broncos t-shirt can only be so 'unique.'" Cmplt. ¶ 228. Plaintiffs' market definition also fails because it improperly excludes all retail channels other than online, from in-stadium stores to sporting goods stores, department stores, and souvenir shops. Plaintiffs do not deny that brick-and-mortar and online stores compete for sales. *See id.* ¶ 94 (alleging "shift *from* traditional 'brick-and-mortar' businesses to 'e-commerce'"). The fact that NFL merchandise is widely available through different sales channels does not render each sales channel a separate market. *See, e.g.*, *Reilly v. Apple Inc.*, 2022 WL 74162, at *6 (N.D. Cal. 2022) (rejecting market limited to "Apple's distribution of iOS apps" because it excluded other platforms "that provide access to apps").

Even if plaintiffs had plausibly alleged market power, the ODP is not unreasonable. A "vertical restraint is not unreasonable unless it impacts interbrand competition." *MHB Distribs., Inc. v. Parker Hannifin Corp*, 800 F. Supp. 1265, 1269 (E.D. Pa. 1992); *see also Borger v. Yamaha Int'l Corp.*, 625 F.2d 390, 397 (2d Cir. 1980) ("reversible error" to assess vertical restraint "solely on the basis of … intrabrand competition"). Here, plaintiffs do not allege *any* harm to *inter*-brand competition. Their NFL-only market *excludes* it. Nor does the ODP meaningfully restrict intra-brand competition. It does not confer exclusivity on anyone, and it does not prohibit anyone from selling online. Every retailer can compete with every other retailer, both online and in physical stores. Even with respect to TPOMs, plaintiffs do not even identify a single retailer that sought approval to sell on a TPOM but was denied. To the contrary, plaintiffs themselves allege that the NFLP's approval of retailers to sell on Amazon was specifically to "plug[] a 'gap' in the availability of NFL Licensed Products on Amazon." Cmplt. ¶ 144. That is competition *enhancing*.

**_Trademark Enforcement is Not an Antitrust Violation_**. Plaintiffs complain that NFLP has unilaterally exercised its trademark rights to limit the use of its marks in paid search advertising. Plaintiffs do not dispute that a trademark holder may "preclude competitors from bidding on its trademarked terms in search advertising auctions or running advertisements on those terms." *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 122 (2d Cir. 2021). As the Second Circuit held, "forcing companies to be less aggressive in enforcing their trademarks is antithetical to the procompetitive goals of trademark policy," and such claims must "fail[] of necessity." *Id.*

**_Ecommerce Outsourcing is Not an Antitrust Violation_**. While plaintiffs claim the NFL and 26 of the 32 teams appointed Fanatics to manage their online stores (Cmplt. ¶ 170), plaintiffs do not allege that any of the NFL Defendants agreed with *each other* to appoint Fanatics. Unilateral outsourcing decisions cannot form the basis of an antitrust claim.

**_The NFL Defendants Have No Role With the Challenged Fanatics Exclusive Licenses._** Plaintiffs allege that Fanatics independently prevented retailers from reselling NFL merchandise on Amazon, but as the complaint makes clear, those alleged refusals have "nothing to do with … the NFL." Cmplt. ¶ 161. And in any event, as explained in Fanatics' pre-motion letter, plaintiffs fail to state a claim as to Fanatics' licenses.



Page 4

          Respectfully submitted,

          /s/ *Bradley I. Ruskin*
          Bradley I. Ruskin
          *Attorney for NFL Defendants*

cc: Counsel of Record